DUNBAR v. STATE.

(Division B. March 9, 1931.)

[132 So. 748. No. 29111.]

Torrey & Torrey, of Meadville, for appellant.

**W. A. Shipman,** Assistant Attorney-General, for the state.

Argued orally by **J. H. Torrey,** for appellant.

**Ethridge, P. J.,** delivered the opinion of the court.

Carson Dunbar was indicted in the circuit court of Franklin county upon the charge of murder of one Mark

Graves, a human being, and was convicted of manslaughter and sentenced to the penitentiary, from which conviction he appeals here.

It appears that the killing occurred at the home of the father-in-law of the deceased, Mark Graves, upon a certain afternoon. On the Sunday previous the deceased had accosted the appellant about the wife of the deceased, and had run him away from the house of another person. It also appeared that Graves and his wife had separated, and that she was at the home of her father at the time, or on the day, the killing occurred. The proof shows that near this house of Horace Jackson, the father-in-law of the deceased, a negro woman named Henrietta Johnson lived, and the appellant was at this home in conversation with a daughter of Henrietta when someone from the home of Horace Jackson, the father of the wife of the deceased, called the appellant to come over there, and he went over to that home and was in a room with a sister of the wife of the deceased, another man, and the deceased's wife when the deceased came into the house armed with a pistol in one hand, and, according to some of the evidence, with a stick in the other hand. He entered shortly after the appellant entered the house, and upon his entering all the persons except the appellant fled from the room. Within a very short period of time three shots were fired in the room, two of which took effect in the deceased, and the third entered a door of the room in which some of the other witnesses had run, knocking a splinter from the door against one of the persons therein. They all thereupon jumped out of the window and ran. Shortly afterward the appellant came out of the house with two pistols and went to the house of Henrietta Johnson, and she asked him if he had killed Mark, meaning the deceased, and the appellant replied, ''If I ain't killed him, I shot to kill him.''

After the shooting took place, a witness at a garage nearby, seeing the marshal of the town going into a drug store, ran to that and told him that the shooting had occurred. The marshal thereupon went to the house of Horace Jackson and into the room where he found the body of the deceased, or the deceased expired a moment after he entered; he was uncertain as to whether he was dead or expired within a very few moments. This marshal was followed by the druggist, who also saw the body lying where it was. Neither of them observed any stick in the room, but observed the wounds, and that he was dead. Within a short time the constable of the district entered the room before anybody had disturbed or moved anything, and he testified to seeing a stick in the floor near the dead body.

The appellant was arrested by the sheriff after the killing, and the appellant produced the pistol identified as the pistol of the deceased, which had in it two cartridges which had been snapped upon. The sheriff insisted that the appellant produce the pistol which he had on that occasion, which he finally did. The sheriff stated that the pistol identified as the pistol of the deceased had not been recently fired, but that the pistol of the appellant had been fired three times.

The witnesses who were in the room, and who fled before the shooting, testified that the deceased, Mark Graves, entered the room with a pistol in his hand and made towards the appellant, that the appellant moved his hand as if to draw a weapon when they fled. There was, therefore, no eyewitness to the shooting. The appellant testified that the deceased came in with the pistol and started to him and that he ran back to the fireplace and grappled with Mark Graves, who had attacked him, and that they scuffled over the possession of the pistol of the deceased, and that in the struggle the pistol fired once between his arm and body; that he had hold of the

pistol and was trying to take it away from Mark Graves, when it fired twice more, and the deceased fell, being hit by two shots fired during the scuffle over the weapon. He testified that he did not draw his weapon, but that when the deceased fell he retained deceased's pistol and carried it out in his hand, and that he drew his own pistol out of his pocket as he went out of the house, and that he went down the steps with a pistol in each hand. He also testified that his own pistol was not fired, and that he removed the shells from the pistol of the deceased before the sheriff saw it, and that that weapon was fired three times during the scuffle in which Mark Graves was killed.

The defendant requested and was refused, among others, the following instructions: "The court instructs the jury, that the law of this state gives a defendant the right to testify in his own behalf, and the jury has no right to disbelieve him simply because he is the defendant, but his testimony is entitled to just as much faith and credit as under all the circumstances the jury think it ought to have and his testimony is just as entitled to consideration as that of any other witness, who testified in this case." And: "The court instructs the jury for the defendant, that if there be any fact or circumstances in this case susceptible of two interpretations, one favorable and the other unfavorable to the accused and when the jury have considered such fact or circumstances with all the other evidence, there is a reasonable doubt as to the correct interpretation, they must resolve such doubt in favor of the accused, and place upon such fact or circumstances the interpretation favorable to the accused."

We are of the opinion that the instructions should have been given under the peculiar facts of this case. The first is subject to some criticism as to the phraseology of the latter part of the instruction, but the defendant was entitled to have the principle announced, and, if the instruction is carefully analyzed and considered, we do

not see that it is misleading. The second refused instruction set out should certainly have been given upon the facts and circumstances of this case. As stated, there were no eyewitnesses to the killing. The defendant's version of the killing is contradicted by the sheriff's testimony as to the conditions of the pistols immediately after the shooting, or the next day after the shooting.

If the jury disregarded the defendant's evidence, then they were dependent upon circumstantial evidence altogether about how the killing occurred, and, where the state relies upon circumstantial evidence entirely, or in the establishment of the essential elements of the crime, it is certainly the law that the defendant should have the benefit of that interpretation favorable to him, where two or more reasonable theories have been established in the evidence, and where the jury, after considering the evidence as a whole, are unable to decide which theory is true in fact. In order to sustain a conviction by circumstantial evidence alone as to any essential ingredient or element of the offense, the circumstances proven must, not only be true in fact, but must be such as exclude every reasonable theory that the defendant is innocent. It must make it impossible to reasonably entertain the theory under the evidence that the defendant is innocent. Of course, if the defendant's evidence was accepted, it would be a justifiable homicide. There can be no question under this evidence that the deceased entered the room armed and in such manner as to indicate clearly that he intended to do serious harm to the appellant. The actions of the witnesses speak louder than their words. It is manifest from the evidence that the deceased had both menace in his manner and malice in his mind. This is not only supported by the verbal acts and testimony of the witnesses at the time but by the undisputed evidence that on the Sunday previous Mark Graves had assaulted and attempted to

hurt the appellant, who only escaped from his vengeance at that time by resorting to flight.

While it is possible that the defendant might be found guilty of manslaughter, it certainly cannot be said to be established conclusively that he is guilty of manslaughter. Under the facts in this case, we think the jury should have the benefit of the instructions mentioned, and for refusing them the judgment is reversed, and the cause remanded for a new trial.

Reversed and remanded.