387 So.2d 101 (1980)
Henry GRAY
v.
STATE of Mississippi.
No. 52022.
Supreme Court of Mississippi.
August 20, 1980.
John P. Price, McComb, for appellant.
Bill Allain, Atty. Gen., by Robert D. Findley, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before SMITH, P.J., and SUGG and COFER, JJ.
*102 SMITH, Presiding Justice, for the Court:
Henry Gray was indicted for the murder of Jack Seals. Following his trial on that charge in the Circuit Court of Pike County, the jury returned a verdict convicting him of manslaughter. For that offense, he was sentenced to serve a term of 16 years imprisonment. He appeals, assigning several grounds for reversal.
It is contended that the verdict of the jury was "contrary to the weight of the admissible evidence."
Under this assignment in appellant's brief it is stated: "The defendant admitted that he shot the decedent, Jack Seals, and even admitted voluntary surrender of the weapon used in the shooting."
The homicide was committed at the Mexi-Hot, a bar at which soft drinks and beer were sold. It does not appear that intoxicants were a factor in the homicide. Ruby Carter, whose son owned the bar, testified that she was behind the bar immediately prior to the shooting. Gray was sitting on a stool at the bar when she first noticed him. Seals came up to the bar and asked Gray if he would have a beer and Gray refused. She testified that Seals had a bottle of Coke, a bottle of Pepsi and two glasses of ice at the time he was shot by Gray. It appears that two women had asked Seals to go to the bar and get their drinks for them.
According to Ruby Carter, who was a few feet away at the time of the shooting, she heard no "words" passed. The witness was looking at Seals when he was shot by Gray. She stated that Gray shot Seals several times, she did not know how many, at a time when Seals was obtaining the Coke and Pepsi and two glasses of ice for the women. She testified that when Seals was shot the drinks and glasses fell to the floor. She stated that nobody disturbed the body of Seals where he lay on the floor. She saw no weapon on Seals and there is no testimony that a weapon was found on his body afterward.
Constable Estess testified that he was called and informed that there had been a shooting. When he arrived at the Mexi-Hot he found Seals lying on the floor dead. He stated that Seals had several wounds, including wounds in the shoulder and back and was lying face down on the floor. He identified photographs of the body. He identified a revolver which had been surrendered to him by Gray as the weapon used in killing Seals. It was loaded with empty shell cases at the time it was given to him by Gray and there were no "live rounds" in it.
Dr. Burrow, a pathologist, was called and arrived to find Seals' body lying on the floor where it had fallen. He found one bullet wound in the right upper thorax anterior and there was one in the right posterior chest, one in the right arm and there was a wound in the posterior aspect of the right neck. The body was transported to the morgue where Dr. Burrow performed an autopsy. He described the numerous bullet wounds in detail and stated that, in his opinion, of the several wounds, the immediate cause of death had been the bullet which entered the right chest, tore the aorta away from the heart, releasing blood into the body.
A ballistics expert from the Mississippi Crime Lab testified that he had made an examination of the bullets taken from the body of Seals and that he had determined that the projectiles were 22 caliber long rifle hollow points. He said that comparison of these projectiles had been made with test bullets fired from the weapon which had been identified by Constable Estess as the one surrendered to him by Gray, and that they had been fired from that revolver.
Henry Gray, the defendant, testified as a witness in his own behalf. He said that he had shot Seals because he was afraid of him. He recalled that he and Seals had had a falling out some 6 months previously and that Seals had shot him in the shoulder with a rifle. He said that he had sued Seals for his hospital expenses. He testified that Seals had said before he was shot that he had thought the controversy as to the former shooting and the payment of the hospital bill was over. He testified that Seals *103 had said to him "last time I liked to have got you and this time I will get you", and had reached under his shirt which was hanging out. Gray said that he had backed up from the stool and started shooting, thinking that Seals was reaching for a weapon. He testified that the week before he shot Seals he and Seals had gotten together and made a settlement of their difficulties but it "didn't work out that way." He said that he had been carrying the gun in his belt, and that he had the gun that night because "I kept it with me when I went anywhere." He testified further that he didn't see any knife or any other weapon but that he had thought Seals was making a break for a weapon and that every time he shot Seals, he and Seals were facing each other and Seals was coming steadily toward him.
Photographs taken of Seals' body as it lay on the floor showed that, contrary to the testimony of Gray, his shirt was not "out" but was neatly tucked into his trousers.
In Carroll v. State, 196 So.2d 878 (Miss. 1967), this Court said:
In reviewing the sufficiency of the evidence to support the verdict, this Court must accept as having been established all that was proved by the evidence, as well as all that such evidence reasonably tended to prove, together with all reasonable inferences to be drawn therefrom, favorable to the theory of the prosecution.
.....
The jury's verdict had the effect of resolving all conflicts in the evidence against appellant, and the findings of the jury, as the trier of facts, are conclusive upon this Court. (196 So.2d at 883).
In considering this assignment, we must accept the evidence which tends to support the verdict as true, together with all reasonable inferences to be drawn from it which reasonably tend to support the verdict. It was the province of the jury to resolve the conflicts in the evidence and they resolved them against appellant, Gray. It is clear that the jury was amply justified in concluding from the evidence, beyond a reasonable doubt, that the killing of Seals by Gray was neither an excusable nor justifiable homicide. The evidence was fully capable of supporting a verdict of murder and was entirely sufficient as a basis for the jury's verdict finding Gray guilty of the lesser included offense of manslaughter. There is no merit in Gray's contention that the verdict was contrary to the weight of the evidence.
Appellant assigns as error the action of the trial court in declining to grant the following instruction:
The Court instructs the jury that under the law the Defendant is a competent witness in his own behalf and that the jury has no right to disbelieve him merely because he is the Defendant; and that his testimony is entitled to such weight, faith and credit as the jury may think proper to give him, just as in the case of other witnesses.
In Phillips v. State, 374 So.2d 824 (Miss. 1979), this Court had occasion to address this precise issue and therein held:
The appellant next assigns as error the refusal of the lower court to grant him the following instruction:
The Court instructs the Jury that under the law, the defendant is a competent witness in his own behalf, and that the Jury has no right to disbelieve him merely because he is the defendant, and that his testimony is entitled to such weight, faith and credit as the Jury may think proper to give it.
However, our research reveals that in the recent case of McNamee v. State, 313 So.2d 392 (Miss. 1975), this Court condemned the use of an instruction similar to the one in the case at bar and held that it was properly refused.
The reasoning in McNamee, supra, was that to grant such an instruction would violate the rule against singling out witnesses and giving undue prominence to their testimony.
Only in rare cases where the testimony of the defendant is the only direct testimony and where the prosecution is based *104 upon circumstantial evidence will an instruction of this type be granted. See, e.g., McNamee v. State, supra; Dunbar v. State, 159 Miss. 603, 132 So. 748 (1931) and McVay v. State, 26 So. 947 (Miss. 1900).
In the case sub judice, the state's case was not based on circumstantial evidence. (374 So.2d at 826).
In the present case, the homicide was committed in the presence of eyewitnesses, and Gray's guilt was established by direct, eyewitness testimony of the circumstances and supported by proof that Seals' death resulted from being shot by the weapon surrendered by Gray to the officers through the testimony of the doctor and the ballistics expert.
The trial court did not commit error in declining to grant the quoted instruction.
Appellant also assigns as error the action of the trial court in granting an instruction requested by the State setting out the law relating to the circumstances which would render a homicide justifiable upon the ground of self-defense.
Appellant asserts that the instruction complained of had not been filed at least 24 hours in advance of trial as required by Rule 5.03, Miss.Unif.Crim.R.Cir.Ct.Prac. (1979), and that no good cause was shown for the delay.
In the State's brief, it is pointed out that appellant had also requested (and was granted) instructions incorporating the theory of self-defense and that there is no basis in the record capable of supporting a finding that prejudice resulted because of delay in submitting the requested instruction. Trial courts may and often do waive requirements of the rule in question. Newell v. State, 308 So.2d 68 (Miss. 1975), Clark v. State, 260 So.2d 445 (Miss. 1972). Unless prejudice is shown to have resulted from the action of the trial court (and no prejudice is shown to have occurred here), the conviction will not be reversed for mere delay in submitting an instruction. Ferrill v. State, 267 So.2d 813 (Miss. 1972).
The conviction and sentence appealed from must, therefore, be affirmed.
AFFIRMED.
PATTERSON, C.J., ROBERTSON, P.J., and SUGG, WALKER, BROOM, LEE, BOWLING and COFER, JJ., concur.