BROOM, Justice,
for the Court:
Armed robbery is the offense for which Bernard Walters (defendant) was convicted in the Circuit Court of the First Judicial District of Hinds County. The jury fixed his punishment at life imprisonment and on his appeal he argues that the lower court erred in (1) excluding him from the courtroom, and (2) rejecting his jury instruction D-4. We affirm.
Together with an accomplice, the defendant on January 5, 1979, robbed the Delta Drive Branch of Deposit Guaranty National Bank in Jackson of approximately $137,000. He admitted the robbery but contended that he was unarmed although he intimidated the bank employees by stating his accomplice had explosives.
As to his exclusion from the courtroom, the defendant admits that his first exclusion was at his request. He argues, however, that his second exclusion was not at his request and was without sufficient provocation.
The following colloquy occurred during voir dire of the jury during which the defendant began his disruptive behavior:
* * * * * *
BY THE COURT:
Do you understand that, if you are selected to try this case, it will be your duty to decide the case by determining what the facts are and by determining *646 the facts solely from the evidence that is produced in open court and that requires that you not consider anything that you might have heard outside the courtroom.
BY THE DEFENDANT:
Excuse me. I would like to tell the jury that this is not a State case. It’s a Federal case and nothing else. They are alleging armed robbery and all that but this is not a State case. I can get a life sentence. You left that out.
BY THE COURT:
I haven’t finished yet, Mr. Walters. Please return to your seat and we will finish with the voir dire.
(Defendant sitting down.)
******
BY THE COURT:
I believe I am going to substitute and let you try another case. Mr. Cofer, take Ms. Vinson down to the other courtroom.
BY THE DEFENDANT:
How is it possible that I can get a fair trial in this courtroom? I have been referred to as nigger all morning in this courtroom and I have got shackles on. How do you expect me to sit here and expect to get a fair trial? How do you expect that?
BY MR. COFER:
This is Leroy Allen which is number four on panel six.
BY THE DEFENDANT:
I have asked the Court to get both these counsel off my case. These people won’t represent me.
BY THE COURT:
Mr. Walters, it’s going to be necessary that you remain quiet.
BY THE DEFENDANT:
I am not going to remain quiet. I am just not going to.
BY THE COURT:
You are going to remain quiet.
BY THE DEFENDANT:
I am not going to remain quiet.
BY THE COURT:
You will have to remain quiet while we conduct the trial.
BY THE DEFENDANT:
I am not going to remain quiet-no. Do what you have to do. You can force me to remain quiet but I am not going to remain quiet on my own volition, you know, and that’s that. I recognize and I understand that I am not going to get a fair trial in this courtroom.
BY THE COURT:
You are going to get a fair trial, Mr. Walters.
BY THE DEFENDANT:
That’s impossible.
BY THE COURT:
And you are also entitled to be present at all times.
BY THE DEFENDANT:
I am not going to get a fair trial. How is it possible? You can’t possibly render a fair trial to me. That’s impossible. How could I get a fair trial?
BY THE COURT:
I am asking you to remain quiet.
BY THE DEFENDANT:
I will not remain quiet.
******
When voir dire was turned over, to the district attorney, the following occurred: BY THE COURT:
Okay. Mr. Peters?
BY MR. PETERS:
May it please the Court-as the judge told you, I am Ed Peters and Vaughn Davis and I will be representing the State. As you have also heard from the defendant in this case, Dale Currie and Kent Stribling is [sic] representing-
BY THE DEFENDANT:
(Interposing) Mr. Currie and Mr. Stri-bling are not my attorneys. I wish you would stop referring to them as my attorneys. The State has put them on my case and I have asked them to take them off my case because neither one of these guys show any interest in the case. They only took it because they would get paid for the case. They don’t have my best interest at heart. Stop referring to them as my attorneys, please.
*647 BY THE COURT:
Mr. Walters, you are going to have to keep under control. Let’s move along.
* * * * * *
BY MR. PETERS:
Thank you. I am going to try to remember but, if I should happen to forget to call your name when you raise your hand, would you remind me that I haven’t told her your name? That way I can think about one thing at a time. I can’t walk and chew gum at the same time so I am going to try to keep my mind on asking the questions. BY THE DEFENDANT: ,
You can’t walk and chew gum at the same time but you are on my case. You are a real idiot, man.
BY THE COURT:
Mr. Walters, I am going to tell you again to keep yourself under control.
BY THE DEFENDANT:
I am not going to keep myself under control.
BY THE COURT:
You are going to keep yourself under control or you are going to be forced to.
BY THE DEFENDANT:
Force me then because that’s the only way-that’s the only way.
BY THE COURT:
Go ahead, Mr. Peters.
BY MR. PETERS:
Thank you, Your Honor.
BY THE DEFENDANT:
Can’t walk and chew gum at the same time. Realize people-
BY THE COURT:
Members of the jury panel, I’ll ask each one of you to make note of where you are sitting at the present time and, when you are called back in, take your same seat. Do all of you understand?
(Jurors nodding heads)
BY THE COURT:
I’ll ask you to step out in the hallway for a few minutes, please.
(Jury panel leaving courtroom)
Outside the jury’s presence, the following occurred:
BY THE COURT:
Mr. Walters, previously in a trial once before, you did the same thing.
BY THE DEFENDANT:
And I am going to keep doing it, Your Honor, and you just do what you have to do.
BY THE COURT:
I want you to listen to me. I want to tell you something.
BY THE DEFENDANT:
I don’t want to hear it.
BY THE COURT:
You have the right to-
BY THE DEFENDANT:
(Interposing) I want you to give me a change of venue.
BY THE COURT:
Just a minute, Mr. Walters.
BY THE DEFENDANT:
I don’t care what you have to say.
(Gag being put on the defendant)
BY THE COURT:
You did this at the last trial. That’s enough for right now. Mr. Walters, you have the right to remain in the courtroom. Your have the right guaranteed under the Constitution to be present at your trial. (Defendant fighting. A bandage was put across his mouth, shackles were put on and he was handcuffed with his hands behind his back).
BY THE COURT:
Mr. Walters, as I was beginning to say and you would not listen to me, I explained to you the last time we attempted to try your case that you have the Constitutional right to be present at all times during your trial. This is one of the guarantees of the Constitution of the United States and of the State of Mississippi and I would like to see that you are afforded that right. During the last trial, despite our attempts to keep you restrained in the courtroom, you *648 persisted in removing the gag and asking that you be allowed to return to your cell and I do not intend to let you continue to disrupt the court and, if you persist, you will be taken back to your cell and brought back only when it is necessary for your presence in the courtroom.
(The defendant worked his mouth free from the tape and was talking through the tape on his mouth).
BY THE DEFENDANT:
I would prefer that.
BY THE COURT:
Are you ready to answer my questions? BY THE DEFENDANT:
I will not answer any questions. I would prefer that you take me back to the jail.
BY THE COURT:
Did I understand that you said you preferred that I take you back to the jail?
BY THE DEFENDANT:
Yes.
BY THE COURT:
Is that correct?
BY THE DEFENDANT:
Yes.
BY THE COURT:
All right. I am going to grant your request but I am going to tell you this. At any time you feel that you can come back and control yourself and not disrupt the court, you let the jailor know and you will be brought back over here. Do you understand that?
BY THE DEFENDANT:
I don’t want to be brought back over here. I want to remain in my cell.
BY THE COURT:
If at any time you want to come back and conduct yourself with the proper demeanor in the courtroom, then you will be permitted to return. Do you understand?
BY THE DEFENDANT:
Yes.
BY THE COURT:
Take him to the jail and tell the jailor that at any time he requests to be brought back to bring him back over here.
(Defendant taken out of courtroom)
BY THE COURT:
We’ll take a few minutes recess.
(Short recess)
BY THE COURT:
Mr. Broadwater-this is out of the presence of the jury and Mr. Broadwater is a bailiff in the case. Did you take Mr. Walters back to the jail?
BY MR. BROADWATER:
Yes, I did, Your Honor.
BY THE COURT:
What instructions did you give to the jailor?
BY MR. BROADWATER:
I instructed the jailor that, when Mr. Walters could control himself, that he should notify us and we would bring him back to court.
BY MR. STRIBLING:
May it please the Court, the defense would like to enter an objection to the defendant’s being physically removed from the courtroom during the trial of this charge.
BY THE COURT:
Well, as I tried to explain to Mr. Walters, at the last setting of this case, during the voir dire by the District Attorney, Mr. Walters spoke out several times in very disrespectful terms and, in fact, started walking towards the exit of the courtroom and had to be restrained by the bailiff and he was taken outside the courtroom and, in the absence of the jury venire, he was requested to control himself and, after approximately a half hour, it was apparent that he would not. An attempt was made to restrain Mr. Walters and all efforts were to no avail. He managed to remove the tape from his mouth and, even after being restrained to his chair, he still managed to get out of the chair and pull the tape from his mouth and continued to be disrespectful and requested that he be permitted to return to his cell. The gist of his statements, as I recall them, was that he did not feel *649 that he should be tried in a State Court-that the bank that he was accused of having robbed was a national bank and he felt that the Federal Court had jurisdiction. During a recess which was taken in the hope that Mr. Walters would get control of himself, the Court was advised by his attorney that he had only .recently learned that Mr. Walters had undergone psychiatric evaluation pending Army proceedings-criminal proceedings against him-and there were some other indications that possibly Mr. Walters was suffering from a mental disorder or had in the past had a mental disorder. The motion was made at that time for a mental examination and, in view of the statements from the attorney and from a relative of the defendant, it was felt that a mental examination was required and that mental examination was carried out. A continuance was granted at that time. It became apparent to me at that time that physical restraint of Mr. Walters would be practically impossible without the use of a straight jacket, shackles, special chair-immovable chair-and gags that could not possibly be removed. Mr. Walters, after being — this morning Mr. Walters’ mouth was taped and cuffs and manacles placed on him so that he could not get his hands to his mouth and remove the gag. He still managed by the movement of his mouth to speak underneath the gag or tape. I feel that the use of the measures that would be necessary to restrain him would be so excessive that the jury would not be able to concentrate on the case. In my opinion, the only alternate to that is to remove him from the courtroom and, for this reason, this action was taken and so your motion to return the defendant to the courtroom will be denied at the present. The jailor has been instructed that at any time Mr. Walters indicates that he is willing to control himself he will be returned. I am instructing the defense counsel that, during any recess that we take, one of you go to the jail and ascertain from Mr. Walters if he will control himself if he is permitted to return to the courtroom or if he wants to return to the courtroom. Are you ready to proceed now?
BY MR. PETERS:
The State is ready, Your Honor.
BY MR. STRIBLING:
Yes, Your Honor.
BY THE COURT:
Bring the jury panel in.
(Jury panel returned to the courtroom)
Shown above are the circumstances related to the defendant’s first exclusion from the courtroom. The record shows that the defendant was appropriately instructed (outside the jury’s presence) as to his right to be present and that he could be admitted back into the courtroom on the condition that he would properly conduct himself.
His second exclusion was occasioned by his further disrespectful and disorderly behavior. Following the defendant’s initial exclusion, the prosecutor continued to voir dire the jury when at the defendant’s request he was admitted back into the courtroom. The following excerpts from the record show what then transpired:
BY THE COURT:
Let the record show that the defendant desires to return to the courtroom and we will be in recess until he returns. (Defendant returning to courtroom)
Voir dire continued until appellant interrupted as follows:
******
BY MR. PETERS:
Is there anyone that feels that this is a racial issue or that there is any racism going on?
(No response)
BY MR. PETERS:
Is there anyone at all that feels that way?
(No response)
BY MR. PETERS:
Anyone?
BY THE DEFENDANT:
Sure it’s an issue of race. Did you ever prosecute a white guy in this courtroom? BY THE COURT:
Mr. Broadwater, carry him back to the jail.
*650 BY THE DEFENDANT:
Sure it’s an issue of race. You know as well as I do it’s an issue of race.
BY THE COURT:
Mr. Walters-
BY THE DEFENDANT:
You offered me fifty years to cop out. You know it’s an issue of race. Do you give any white guys fifty years to cop out? You know it’s an issue of race, man. You are a racist.
BY THE COURT:
Carry him on, Mr. Broadwater.
(Defendant leaving courtroom)
BY THE COURT:
You may continue.
The following excerpt from the record reflects voir dire of the jury by both the prosecution and defense counsel to determine if the jurors were prejudiced by behavior of the defendant.
BY MR. PETERS:
I am going to ask you all to be honest because I know sometimes it’s hard not to be influenced either for or against a case because of certain things that are done outside of the evidence. Is there anyone that has been so prejudiced by what has taken place so far that they would not be a fair juror in this case, either for or against the defendant?
(No response)
BY MR. PETERS:
Anyone?
(No response)
BY MR. PETERS:
Is there anyone that would hold it against the prosecution-hold it against Mr. Davis or I or the State of Mississippi-because of what has happened so far?
(No response)
BY MR. PETERS:
Anyone at all?
(No response)
******
BY MR. PETERS:
Is there anyone that would hold it against him because of what he has done in the courtroom this morning?
(No response)
******
BY MR. STRIBLING:
Now, what you have seen in the courtroom today, I understand that none of you will treat that as evidence in this case. Is that right?
(Jurors nodding)
BY MR. STRIBLING:
Because it has absolutely nothing to do with what supposedly happened on January 5, 1979 at the Deposit Guaranty Bank. Now, is there anyone here that would let that come into the proof of this case by the State?
(Jurors shaking heads)
BY MR. STRIBLING:
Will it make any difference-what he said or what he did today-in the State’s duty to prove beyond a reasonable doubt that he is guilty of the crime? Do each of you understand what I am talking about?
(Jurors nodding)
BY MR. STRIBLING:
I believe that’s all.
******
BY MR. BROADWATER:
The defendant wants to return to the courtroom, Your Honor.
(Off the record)
(Defendant decides not to return to the courtroom)
After completion of the jury selection process, and opening statements, defense counsel stated:
BY MR. CURRIE:
. .. Now, this is an unusual case in that the defendant is not in the courtroom. The Court has ruled that he did not have to be here but the Court has thus far not informed you that the defendant is not required to testify. He is not required to testify. He doesn’t have to do anything. The entire burden of proof is upon the State to prove each and every element of the offense.
******
*651 Testimony of Thad Bridges, an eyewitness to the armed robbery, was introduced during which the defendant was brought back into the courtroom for Mr. Bridges to identify him as the bank robber. The record reflects the following:
BY MR. DAVIS:
Your Honor, would you let the record reflect that he has identified the defendant in this case.
BY THE COURT:
It may so reflect.
(Defendant standing up and saying something that this court reporter could not understand.)
BY THE COURT:
Mr. Walters-
BY THE DEFENDANT:
That’s all right. I’ll stay.
BY THE COURT:
Go ahead, Mr. Davis.
* * * * % *
With the defendant in the courtroom, trial proceeded during which two state witnesses without equivocation clearly identified the defendant in court as the armed robber of the bank. We think, in view of the defendant’s outbursts and disruptive behavior, the lower court acted within its proper discretion demonstrating much patience and judicial statesmanship in excluding him from the courtroom and then allowing his return at his request. McMillian v. State, 361 So.2d 495 (Miss.1978); Illinois v. Allen, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970); United States v. Bankston, 424 F.2d 714, 716 (5th Cir. 1970).
Next proposition before us is the defendant’s argument that the lower court committed reversible error in refusing Jury Instruction D-4, which reads:
The law of this State gives a Defendant the right to testify in his own behalf, and the Jury has no right to disbelieve him simply because he is the Defendant. His testimony is entitled to just as much faith and credit as the Jury under all the circumstances thinks it ought to have. Furthermore, his testimony is just as entitled to consideration as that of any other witness who testified in this case.
Refused
D-4.
We stated in McNamee v. State, 313 So.2d 392, 395 (Miss.1975) that:
This instruction in many forms has had a long and variable, if not a capricious, history. We have condemned this instruction in the following cases: Clark v. State, 206 Miss. 701, 39 So.2d 783 (1949); Parrett v. State, 205 Miss. 651, 39 So.2d 272 (1949); Coleman v. State, 22 So.2d 410 (Miss.1945); Murphy v. State, 119 Miss. 220, 80 So. 636 (1919); Vails v. State, 94 Miss. 365, 48 So. 725 (1909). We have allowed similar instructions in Dunbar v. State, 159 Miss. 603, 132 So. 748 (1931), and McVay v. State, 26 So. 947 (Miss.1900). i
The reasons given by the court to disallow the instruction in the above cases is because it is an instruction upon the weight and worth of the testimony, and because it points out and holds up for inspection a particular part of the evidence so as to emphasize its value.
* * * * * *
We hold that the instruction was properly refused under the facts in this case. It is a rare case when such an instruction is permissible.
Later in Phillips v. State, 374 So.2d 824, 826 (Miss.1979) we stated:
The reasoning in McNamee, supra, was that to grant such an instruction would violate the rule against singling out witnesses and giving undue prominance [sic] to their testimony.
Only in rare eases where the testimony of the defendant is the only direct testimony and where the prosecution is based upon circumstantial evidence will an instruction of this type be granted. See, e. g., McNamee v. State, supra; Dunbar v. State, 159 Miss. 603, 132 So. 748 (1931) and McVay v. State, 26 So. 947 (Miss.1900).
In the case sub judice, the state’s case was not based on circumstantial evidence.
*652 Here it is to be noted that the state’s case against the defendant was not based on circumstantial evidence but upon the testimony of eyewitnesses who positively identified him as the robber of the bank. He admitted the robbery and asserted his defense that he was not armed which the jury rejected. Careful scrutiny of the record shows that the defendant’s guilt was established beyond a reasonable doubt by the evidence. One would be hard put to reach any other verdict than “guilty as charged” which the jury returned. Accordingly, affirmance is required.
AFFIRMED.
PATTERSON, C. J., SMITH and ROBERTSON; P. JJ., and SUGG, WALKER, LEE, BOWLING and COFER, JJ., concur.