LEE, Justice,
dissenting:
I dissent from the majority opinion for the reason that, in my view, the judgment of the county court was against the overwhelming weight of the evidence in that the charge was not proved beyond a reasonable doubt and the circuit court erred in affirming the judgment of the county court.
An affidavit was filed in the Hinds County Court on September 6, 1979, charging that appellant “ ... on or about January 5, 1979, did then and there wilfully and unlawfully, with the intention and expectation of receiving a valuable consideration therefor, act in the capacity of a real estate broker by obtaining a listing agreement with Richard H. Kimbrough and Kimb-rough Investment Company of Jackson, Hinds County, Mississippi for the sale of certain Mississippi property owned by the said Kimbrough Investment Company, that property being the Biloxi Sheraton Hotel, located in Biloxi, Harrison County, Mississippi, and by negotiating and procuring, for a fee, John R. Neyrey as purchaser of the above mentioned property, intending such negotiations to result in a real estate transaction, all at a time when the said George M. Mitchell did not possess a Mississippi real estate license, contrary to Section 73-35-1, Mississippi Code of 1972, as amended, ...”
The affidavit was based on Mississippi Code Annotated Section 73-35-1 (1972), as mentioned, which provides the following:
“This chapter shall be known, and may be cited, as ‘the Real Estate Brokers License Law of 1954;’ and from and after May 6, 1954 it shall be unlawful for any person, partnership, association or corporation to engage in or carry on, directly or indirectly, or to advertise or to hold himself, itself, or themselves out as engaging in or carrying on, the business, or act in the capacity of, a real estate broker, or a real estate salesman, within this state, without first obtaining a license as a real estate broker or real estate salesman as provided for in this chapter.”
Prior to January 5, 1979, appellant learned that Kimbrough Investment Company, owner of the Biloxi Sheraton Motor Inn, located in Biloxi, Mississippi, desired to sell said hotel. He contacted Richard H. Kimbrough, president of the company, and discussed the sale. Kimbrough indicated to Mitchell that the company did not wish to sell the property to anyone in Mississippi, since he was of the opinion that no such person was interested and financially able to purchase same. Appellant then stated that he planned to make a trip outside the continental United States and thought he could put together a group of people who could buy the hotel. As a result of these talks, on January 5, 1979, Kimbrough wrote appellant two (2) separate letters, the first indicating that Kimbrough Investment Company was willing to pay a real estate commission of two percent (2%) of the sale price of six million dollars ($6,000,000) on the Sheraton Biloxi Motor Inn provided it was a straight total cash net to the hotel and provided no selling and negotiating was required by Kimbrough. Portions of the second letter follow:
“We appreciate your interest in purchasing the Sheraton-Biloxi Motor Inn. However, as you can imagine, since we have placed this property on the market we have been besieged by all types of people offering all types of plans to complete the purchase of the Hotel. By far, the majority of the plans which have been outlined before us, boil down not to a genuine offer for purchase, but an offer to manage the Hotel. Since we are not interested in this type of arrangement, much of our time and the time of prospective purchasers or managers, can be saved by having this understood at the outset. Below I am outlining the qualifications for a prospective purchaser succinctly and plainly, so that there will be no misunderstanding. If you do not fit these qualifications, there is no need to discuss the matter further.
* * * * * *
*334 If you feel you meet the above qualifications, please outline your plan to purchase in writing, based on a sales price of $6,000,000. Please give details as to how you intend financing to be arranged and give us complete details to evidence your ability to carry out your plan.
We will consider your plan as submitted and contact you if it is apparent you do meet our qualifications.
******
I hope you meet the above qualifications and that we will be hearing from you shortly.”
Subsequently, appellant contacted various people on the Mississippi Gulf Coast with the idea of forming a group of people who would raise the finances necessary to purchase the hotel. It is uncontradicted that he met with Mr. Edward McDonnell, who testified that appellant approached him with the idea of a group of investors purchasing the hotel and then reselling it, and that appellant never acted as a real estate broker. Appellant contacted Mr. John A. Dottley, Sr. of Vicksburg, who testified that appellant never approached him as a real estate salesman or realtor but only in an attempt to associate a group of people to purchase the hotel. Mr. Robert H. Holmes, Jr., president of the Central Bank of Mississippi in Brandon, testified that appellant discussed with him the possibility of getting together a group of persons to purchase the hotel for future resale, and that appellant never represented himself to be a real estate salesman but an investor who wanted to buy the property and resell it.
Mr. Edward McDonnell arranged for a meeting between appellant and Mr. John R. Neyrey, who was president of Production Oil Corporation and owner of the Royal D’Iberville Hotel in Biloxi. Neyrey was led by appellant to believe that he (appellant) held an option to buy the motor inn property, and Neyrey became interested in acquiring the option. However, according to Ney-rey, he wanted to negotiate directly with Kimbrough Investment Company in order that the title and transfer instrument would have the backing and guarantee of that company rather than for him to acquire title through Mitchell, an individual. An agreement was entered into between Neyrey and appellant on the 25th day of January, 1979, wherein Neyrey agreed to pay to appellant the sum of one hundred seventy-five thousand dollars ($175,000) on his purchase of the Biloxi Sheraton Motor Inn, eighteen thousand dollars ($18,000) of said amount to be paid upon the execution of the contract and the balance upon consummation of the purchase of the property.[1] Neyrey insisted that they appear before his attorney, who drew the contract after which it was executed by Neyrey and Mitchell. Pertinent parts of the contract follow:
“WHEREAS, party of the first part has a certain understanding and agreement with the present owners of the Biloxi Sheraton Hotel located within the City of Biloxi, Harrison County, State of Mississippi; and
WHEREAS, party of the first part, pursuant to the aforesaid contract and agreement with the owners of the Biloxi Sheraton Hotel, would otherwise be entitled to certain remunerations from said owners in the event of the sale of the said Biloxi Sheraton Hotel; and
WHEREAS, parties of the second part are desirous of negotiating directly with the owners of the said Biloxi Sheraton Hotel for the purchase of said hotel,
NOW THEREFORE, for and in consideration of the consideration flowing among, by, and between the parties hereto, it is hereby understood and agreed as follows, to-wit:
A. For and in consideration of the sum of One Hundred Seventy Five Thousand Dollars ($175,000.00), payment of said sum to be contingent upon the pur *335 chase of the said Biloxi Sheraton Hotel by parties of the second part, or either of them, party of the first part hereby agrees to abandon, forego, and hold for naught any other agreements, understandings, or contracts, whether verbal or written he may have with any other person regarding any remuneration whatsoever which might have otherwise been due him regarding the sale of the said Biloxi Sheraton Hotel.
B. Party of the second part hereby acknowledges receipt of the sum of Eighteen Thousand Dollars ($18,000.00) cash in hand paid as partial consideration for this agreement, and to apply against the sum of One Hundred Seventy Five Thousand Dollars ($175,000.00) which will be due him from parties of the second part should parties of the second part purchase the aforesaid Biloxi Sheraton Hotel. Should parties of the second part, or either of them, fail to consummate a purchase of the Biloxi Sheraton Hotel from its present owners, then said sum of Eighteen Thousand Dollars ($18,000.00) shall be forfeited by parties of the second part to party of the first part.
C. Party of the first part hereby agrees to hold harmless any and all persons, including the present owners of the Biloxi Sheraton Hotel, from any and all liability of any kind whatsoever including, but not limited to, any remuneration due him under the aforementioned contract or agreement with the present owners of the Biloxi Sheraton Hotel which might otherwise have been due to party of the first part as a result of the purchase of the said Biloxi Sheraton Hotel by parties of the second part, or either of them.
D. Party of the first part hereby authorizes and empowers parties of the second part, or either of them, to negotiate directly with the owners of the Biloxi Sheraton Hotel, and to do any and all things necessary to effectuate a purchase of the said Biloxi Sheraton Hotel directly from its present owners, with no further liability to party of the first part of any kind whatsoever.”
Mr. Neyrey testified with reference to the contract:
“A. We agreed on a remuneration or consideration of One Hundred Seventy Five Thousand Dollars ($175,-000).
Q. Who signed that contract?
A. It was drawn by my attorney, Clyde Hurlbert of Biloxi. Mr. Mitchell and I appeared before Mr. Hurlbert and told him of the arrangements that we had reached regarding the sale, and based on our giving him that information he drew the draft of this contract.
Q. Ok. The contract as it was finally signed, is that the way it was originally worded?
A. No sir. The contract initially contained a specific reference to a broker or agent’s representation by Mr. Mitchell.
Q. All right. And why was that deleted?
A. At the time we presented the information to Mr. Hurlbert, Mr. Mitchell told him, T am not an agent or a broker. I am selling you my right to the property, my exclusive option to purchase the property for which Mr. Kimbrough has guaranteed me a remuneration or a commission’.”
I am of the opinion that the evidence in this case does not support the charge in the affidavit, that the judgment of conviction is contrary to the overwhelming weight of the evidence, and that it should be reversed and the appellant discharged. Gray v. State, 387 So.2d 101 (Miss.1980); Moody v. State, 371 So.2d 408 (Miss.1979).
SMITH, P. J., and BOWLING and HAWKINS, JJ., join in this dissent.

. Subsequently, Kimbrough sold the property to Neyrey who then declined to pay appellant the balance of one hundred fifty-seven thousand dollars ($157,000). Appellant sued Ney-rey and Kimbrough for that balance, after which these criminal proceedings were brought.