472 So.2d 379 (1985)
Denver Ray HICKSON
v.
STATE of Mississippi.
No. 54779.
Supreme Court of Mississippi.
June 5, 1985.
*380 W. Vol Jones, Jr., Waynesboro, for appellant.
Bill Allain, Atty. Gen. by Frankie Walton White, Sp. Asst. Atty. Gen., Jackson, Edwin Lloyd Pittman, Atty. Gen. by Jack Lacy, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before PATTERSON, C.J., and PRATHER and ROBERTSON, JJ.
ROBERTSON, Justice, for the Court:

I.
This case begins with the unexplained disappearance of a young prostitute from the Mississippi Gulf Coast back in April of 1982. A month later a group of youths swimming playfully in Thompson Creek in Wayne County have an eerie encounter with a wrapped and weighted body. The case moves from the morbid to the macabre as the prosecuting attorney displayed to the jury the deformed hands of the deceased, pickled in a jar of formaldehyde.
For the reasons to be explained below, we regard that the interjection of the victim's hands into the proceedings was so prejudicial that the accused was deprived of his right to a fair trial. We reverse.

II.
On or about April 18, 1982, Susan Carol Johnston Culipher was strangled to death. After she was dead, Culipher's body was apparently shot in the ribcage, for reasons unknown. Her body was then placed in a sort of envelope made of burlap croaker sacks that were half filled with sand and gravel. These sacks were also wrapped in chicken wire and tied with copper wire. So wrapped, Culipher's body was then sunk in Thompson Creek in Wayne County, Mississippi. While swimming in Thompson Creek with some friends on May 21, 1982, James West happened upon the body which on removal was found in a partially decomposed state.
To facilitate identification the State's pathologist severed the head and hands. These in turn were examined at the State Crime Lab for dental and/or fingerprint identification purposes. After a lengthy investigative process  which included running in the newspaper composite police drawings of what it was thought the victim looked like before decomposition had set in  the deceased was identified as Culipher. Once this identification had been established, and upon further police investigation, two friends of Culiphers  Denver Ray Hickson and his girlfriend, Patricia Ann Criddle  were, on July 3, 1982, arrested and charged with murder. Hickson was the Defendant below and is the Appellant here. In September of 1982, Hickson and Criddle were indicted for the murder of Susan Carol Johnston Culipher. Criddle pled guilty to manslaughter before Hickson's trial.
On January 30, 1983, this case was called for trial in the Circuit Court of Wayne County. During voir dire of the special venire, Hickson was led into the court room in handcuffs and seated. Some thirty minutes thereafter, defense counsel moved for a mistrial based upon the prejudice said to have accrued from the jury seeing Hickson in handcuffs, but his motion was denied. Instead, Hickson was led out of the courtroom, the handcuffs removed, and he was then brought back in.[1]
*381 The State's evidence at trial showed how Culipher was killed but not why. Culipher had apparently been living in Gulfport as a prostitute. The proof was essentially that Hickson, Criddle and Culipher had left Gulfport together on April 17 or 18, 1982. Culipher had taken a blue suitcase with her that was placed in the trunk of Hickson's car. No one ever saw Culipher again alive. The blue suitcase was later found in Hickson's dwelling. Potato sacks and wire  similar to those used in the disposal of Culipher's body  were found in Hickson's possession. The bullet in Culipher's body came from a gun which apparently was sold to someone else by Hickson. Hickson is said to have described  without specific reference to Culipher  the method in which her body was disposed of and stated that if someone wanted to get rid of a body that would be an ideal method. Further, witnesses stated that Hickson had told them that they would "never" see Culipher again.
While examining the pathologist who performed the autopsy of Culipher, the district attorney took from a box and held up in front of the jury a glass jar containing the "pickled" hands of the victim  recall that the hands and head had been severed from the body and sent to the State Crime Lab primarily in connection with the State's effort to identify the body. Hickson moved for a mistrial citing the inflammatory effect of exposing the jury to these gruesome pieces of the corpse, but the motion was overruled. The hands were marked for identification but were never received into evidence. The district attorney requested that the "pickled hands" be received in evidence but withdrew the request, because apparently the jar was leaking formaldehyde. Color photographs of the hands and partially decomposed corpse were in evidence.
At the conclusion of all of the evidence, the jury, on January 21, 1983, found Hickson guilty of murder. Miss. Code Ann. § 97-3-19(1)(a) (Supp. 1984). Thereafter, the Circuit Court determined that Hickson was a recidivist within Miss. Code Ann. § 99-19-83 (Supp. 1984) and sentenced Hickson to life imprisonment without possibility of probation or parole.
In due course thereafter Hickson filed a motion denominated "Motion For A New Trial", which, because it challenges the sufficiency of the evidence, is in reality an alternative motion for judgment of acquittal notwithstanding the verdict of the jury or for a new trial. In any event, on February 4, 1983, the motion was overruled, and this appeal has followed.

III.
At oral argument defense counsel earnestly and ably urged that the proceedings below had resulted in a miscarriage of justice in that an innocent man has been convicted. Our review of the record convinces us otherwise.
Testing the evidence under our familiar standards, see May v. State, 460 So.2d 778, 781 (Miss. 1984), we hold that there is in this record evidence of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard, fair-minded jurors in the exercise of impartial judgment might conclude that Hickson was guilty. Accordingly, the Circuit Court correctly denied Hickson's request for a peremptory instruction and overruled his subsequent motion for j.n.o.v. See Pharr v. State, 465 So.2d 294, 301 (Miss. 1984); Williams v. State, 463 So.2d 1064, 1067-1068 (Miss. 1985).
By the same token, and by reference to the evidence summarized in Section II above, we may say with confidence that the Circuit Court was well within its discretion *382 when it overruled Hickson's motion for a new trial insofar as that motion challenges the weight of the evidence. See Pharr v. State, 465 So.2d at 301-302; Williams v. State, 463 So.2d at 1068.

IV.
Hickson next argues that the Circuit Court of Wayne County, Mississippi, was without authority to hear the case, citing Miss. Code Ann. § 99-11-3 (1972). Hickson contends that the only testimony in this case giving the place where the killing occurred indicates the crime took place in Copiah County, rather than Wayne County. Hickson, therefore, concludes that venue was improper in Wayne County.
Without doubt Culipher's body was found in Wayne County. Hickson acknowledges State v. Fabian, 263 So.2d 773 (Miss. 1972), whose rule is that "the finding of a dead body in a particular county raises the presumption, or supports an inference, that the killing took place there." 263 So.2d at 775. Nonetheless, Hickson attempts to distinguish Fabian on the basis that in Fabian there was no evidence where the killing took place, whereas in this case there was some evidence that the killing took place in Copiah County.
Just where in the record this evidence that the homicide occurred in Copiah County may be found has not been made known to us. There is no testimony in this record to that effect. The suggestion that the killing took place in Copiah County appears to have been the product of knowledge gained by the trial judge when accepting Criddle's manslaughter plea. The trial judge mentioned, during a hearing on a motion in Hickson's trial, what Criddle had said when she pled. But Criddle did not testify in this case, and we have found no other evidence pointing to a killing anywhere other than Wayne County.
Venue in a criminal prosecution may be proved by circumstance or inference. Fairchild v. State, 459 So.2d 793, 799 (Miss. 1984); Sanders v. State, 286 So.2d 825, 827 (Miss. 1973). The legislative enactment on the subject, Miss. Code Ann. § 99-11-3 (1972), after stating the general rule that venue lies in the county where the offense was committed, states:
But, if on the trial the evidence makes it doubtful in which of several counties ... the offense was committed, such doubt shall not avail to procure the acquittal of the defendant.
This statute has been received authoritative elaboration in Fairchild v. State, 459 So.2d 793 (Miss. 1984), which effectively dispatches Hickson's argument.
Under our law, the fact that [the victim] that was found dead in [Wayne] County raises a rebuttable presumption, or supports an inference, that all or part of the homicide took place in [Wayne] County. Sanders v. State, 286 So.2d 825, 827 (Miss. 1973); State v. Fabian, 263 So.2d 773, 779 (Miss. 1972). [Hickson] having offered nothing to rebut this presumption or make unreasonable the inference, we hold the evidence sufficient to undergird a finding that venue was proper in [Wayne] County.
 Fairchild v. State, 459 So.2d at 799.
Enough said. The assignment of error is denied.

V.
Hickson next complains that at the outset of the trial he was led into the courtroom in handcuffs and was required to sit handcuffed in the view of the unselected jurors between 30 minutes and an hour. This, Hickson argues, substantially eroded the presumption of innocence to which he was at that time entitled and communicated to the jurors that Hickson was not only guilty but dangerous.
The record regretably is less than crystal clear on this point. It does appear that, at some time after Hickson was seated in the courtroom handcuffed, the matter was called to the attention of the trial judge whereupon Hickson was led out of the courtroom and the handcuffs were removed. Nothing in the record suggests that Hickson posed a security threat or that he had in any other way by his present *383 conduct merited the handcuffs. Both by what appears and what may not be found, the record reveals Hickson's point not without merit.
The principle that there is a presumption of innocence in favor of the accused in a criminal prosecution is "fundamental".[2]Estelle v. Williams, 425 U.S. 501, 503-504, 96 S.Ct. 1691, 1692-93, 48 L.Ed.2d 126, 130 (1976). Its enforcement lies at the foundation of the administration of our criminal justice system. Taylor v. Kentucky, 436 U.S. 478, 483, 98 S.Ct. 1930, 1933, 56 L.Ed.2d 468, 474 (1978). Though not expressly written into the Bill of Rights, the presumption of innocence has long been recognized as the logical corollary of the principle that the prosecution bears the burden of proof beyond a reasonable doubt, a proposition which has been accorded federal constitutional status. Jackson v. Virginia, 443 U.S. 307, 315-16, 99 S.Ct. 2781, 2786-87, 61 L.Ed.2d 560, 571 (1979). This Court has been sensitive to subtle erosions of the presumption of innocence. Friday v. State, 462 So.2d 336, 338 (Miss. 1985) (prospect of destroying presumption of innocence inherent in multi-count indictment).
The courts of other jurisdictions have long recognized the substantial danger of destruction in the minds of the jury of the presumption of innocence where the accused is required to wear prison garb, is handcuffed or otherwise shackled. See, e.g., Brewster v. Bordenkircher, 745 F.2d 913, 916-18 (4th Cir.1984); Zygadlo v. Wainwright, 720 F.2d 1221, 1223 (11th Cir.1983); Kennedy v. Cardwell, 487 F.2d 101, 104 (6th Cir.1973); Hernandez v. Beto, 443 F.2d 634, 636-637 (5th Cir.1971); State v. Crawford, 99 Idaho 87, 95-96, 577 P.2d 1135, 1143-44 (1978); Shultz v. State, 131 Fla. 757, 758, 179 So. 764, 765 (1938); Blair v. Commonwealth, 171 Ky. 319, 327-29, 188 S.W. 390, 393-94 (1916).
Our principal case regarding bringing an accused into the courtroom in front of the jury in shackles is Rush v. State, 301 So.2d 297 (Miss. 1974), wherein we stated:
The appellant contends that being exposed to the jurors in handcuffs denied him a fair trial. It is a common-law right of a person being tried for the commission of a crime to be free from all manner of shackles or bonds, whether of hands or feet, when in court in the presence of the jury, unless in exceptional cases where there is evident danger of his escape or in order to protect others from an attempt by the prisoner. Whether that ought be done is in the discretion of the court, based upon reasonable grounds for apprehension. But, if the right of the accused is violated, it may be ground for the reversal of a judgment of conviction. citation omitted.
 301 So.2d at 300.

Rush found no reversible error because the failure, through an oversight, to remove handcuffs from a prisoner for a short time or any technical violation of the rule prohibiting shackling nor prejudicial to him, is not ground for reversal.
 301 So.2d at 300.
In Rush, the handcuffs, once noticed by the court, were immediately removed. In the case at bar, the State admits that "roughly 30 to 45 minutes" passed before the handcuffs were removed from Hickson. Brief for Appellee at 9. There is no evidence that Hickson posed a security threat. We note that after Hickson was unhandcuffed, he sat through the remainder of the proceedings without incident. Whether on these facts reversal is required is a question we need not face, for there is a more serious matter discussed below which standing alone necessitates a new trial. Upon retrial, we trust the presumption of innocence to which Hickson will again become entitled will be wholly respected.
Having said these things we emphasize that, in the face of a present threat to security or the order and decorum of the *384 proceedings, the trial judge is not without remedial authority. Rule 5.01 of our Uniform Criminal Rules of Circuit Court Practice provides that:
No conduct interfering with or obstructing the administration of justice shall be tolerated.
See Walters v. State, 391 So.2d 645, 651 (Miss. 1980). Yet one on trial for life or liberty may in the presence of the jury be handcuffed or otherwise shackled only by reason of a clear and present danger to order or security.

VI.
The dispositive assignment of error regards the district attorney's macabre display before the jury of Culipher's "pickled hands" in a glass jar at a time when they had not been offered, much less received, into evidence. This action, we are urged, was prosecutorial misconduct which operated to deny Hickson a fair trial entitlement to which was his right. Hickson assigns as error the Circuit Court's denial of his motion for a mistrial. See Rule 5.15, Unif. Crim.R.Cir.Ct.Prac.
The State cites Keeton v. State, 175 Miss. 631, 167 So. 68 (1936), as a case where this Court approved placing before the jury parts of a victim's body. In Keeton, the body of the victim  as a whole  was missing and portions of the victim's legs were used to prove corpus delicti. Without such proof, the only evidence of a crime was the uncorroborated confession of the defendant. There is no such corpus delicti problem in the case at bar. Moreover, the complaint here is the display before the jury of hands not admitted as exhibits.
The State further argues that the hands were necessary for the identification of the victim. To be sure, the pathologist had testified that the hands had been severed to be sent to the State Crime Lab. At trial, however, no issue was made of the identification of the victim. Again, the State glosses over the fact that the hands were never received into evidence. Assuming arguendo that the hands had evidentiary value, the district attorney under no circumstances should have displayed them to the jury before they were formally tendered and received into evidence by the trial judge.
This right of one criminally accused to a fair trial is a "fundamental liberty" secured to the accused by the Fourteenth Amendment to the Constitution of the United States. Estelle v. Williams, 425 U.S. 501, 503, 96 S.Ct. 1691, 1692-93, 48 L.Ed.2d 126, 130 (1976); Drope v. Missouri, 420 U.S. 162, 172, 95 S.Ct. 896, 904, 43 L.Ed.2d 103, 113 (1975). We have in a variety of contexts condemned conduct by the prosecuting attorneys that has substantially deflected the jury's attention from the issues it has been called up to decide, that interjects appeals to bias, passion or prejudice. Where such conduct is so substantial that the accused's right to a fair trial is substantially impaired, the trial judge should declare a mistrial. See Rule 5.15, Unif.Crim.R.Cir.Ct.Prac. Where the trial judge has abused his discretion in such matters, we unhesitatingly reverse. See, e.g., Acevedo v. State, 467 So.2d 220, 226 (Miss. 1985) (prosecutor's conduct amounting to interference with administration of justice); Smith v. State, 457 So.2d 327, 333-36 (Miss. 1984) (insinuating criminal conduct unsupported by any proof); Wiley v. State, 449 So.2d 756, 762-763 (Miss. 1984) (improper argument to jury that appeals were available to defendant); Williams v. State, 445 So.2d 798, 813 (Miss. 1984) (improper argument to jury regarding possibility of parole); Wilson v. State, 433 So.2d 1142, 1145-46 (Miss. 1983) (improper comment on defendant's failure to testify); Howell v. State, 411 So.2d 772, 773-77 (Miss. 1982) (telling jury that their verdict was not final was error); Stewart v. State, 263 So.2d 754, 756-58 (Miss. 1972) (insinuating crimes without any proof); Wood v. State, 257 So.2d 193, 199-200 (Miss. 1972) (insinuating immorality improper).
At oral argument, the representative from the Attorney General's Office stated that he had discussed this issue  of displaying body parts to the jury  with the *385 top officials in the Criminal Justice Division, and that the Division's position was to urge this Court to condemn such displays, so that a situation like this one never again occurs, in the strongest possible manner  short of reversal. The Attorney General's representative argued that despite the admitted prejudice flowing from the display of the hands, such a display was harmless error given the specific facts of this case. We applaud this honest admission that prejudice flowed from the display, and we also commend that Attorney General's Office for seeking to protect justice by urging this Court to forbid such displays in the future. Nonetheless we cannot agree that affirming Hickson's conviction despite the display is an efficacious method to administer the necessary preventative.
Little common sense is required to perceive that display of anatomical parts of a homicide victim may adversely affect the fairness of the trial atmosphere. Once the severed organ or limb has been seen, no amount of instruction or admonition from the trial judge may dispell the indelible imprint of its impression upon the juror's mind.[3] There is no antidote for the poison other than a mistrial. In this context we find considerable truth in the caveat from Self v. State, 90 Miss. 58, 43 So. 945 (1907):
"There is a natural tendency to infer from the mere production of a material object the truth of all that is predicated of it. Second, the sight of death weapons, cruel injuries, etc., tends to overwhelm reason and associate the accused with the atrocity without sufficient evidence." All this applies with marked emphasis to the production before an average jury of the skull of the deceased.
 Self, 90 Miss. at 63, 43 So. at 946. (quoting Wigmore on Evidence).
We proceed today in the context of the use of anatomical parts which have not been received into evidence. We hesitate, however, to suggest a hard and fast rule that such may never be used as evidence. There may come a day when the presentation of some telltale heart to the jury is legitimately necessary to the administration of justice. Cf. Keeton v. State, 175 Miss. 631, 651-52, 167 So. 68, 72 (1936) (body parts admitted to prove death of homicide victim); Larmon v. State, 81 Fla. 553, 555, 88 So. 471, 471-72 (1921) (skull admissible to illustrate course of bullet and consequent nature of killing); Self v. State, 90 Miss. 58, 63, 43 So. 945, 945-46 (1907) (use of skull in court room improper because its condition at the time of trial was not nearly the same as its former condition).
The obvious psychological impact of viewing several anatomical parts is such that even when tendered as evidence the trial judge should exercise extreme caution. If there is reasonably available an alternative method of proving the point, the trial judge should preclude admission of the anatomical part. For today's purposes, it is sufficient to note that the hands were not offered in evidence and the State offers no valid trial purpose that is served by displaying the "pickled hands" to the jury prior to their receipt into evidence.

VII.
In conclusion, we hold under the facts of this case that the Circuit Court abused its discretion when it refused to declare a mistrial when the State presented in open court the jar of "pickled hands" of the victim. Moreover, we cannot say with confidence that substantial prejudice was not experienced by Denver Ray Hickson when he was brought before the jurors in handcuffs. Having in mind our harmless error rule, Rule 11, Miss.Sup.Ct.R., we reverse on the pickled hands issue. Our confidence that our action is correct is enhanced by our perception of the combined prejudicial impact of these two actions by the State was such that Hickson's right to a fair trial was substantially compromised. See Barnes v. State, 460 So.2d 126, 135 (Miss. *386 1984); Collins v. State, 408 So.2d 1376, 1380 (Miss. 1982). Accordingly, the judgment of conviction of Denver Ray Hickson of murder must be reversed and this case remanded to the Circuit Court of Wayne County for a new trial.
REVERSED AND REMANDED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, DAN M. LEE, PRATHER, SULLIVAN and ANDERSON, JJ., concur.
NOTES
[1] We observe that the record is less than crystal clear as to exactly what happened regarding Hickson having been presented to the jury in handcuffs. As in all appeals, the appellant has the burden of presenting to this Court a full and complete record of the relevant proceedings at trial. To this end each litigant at trial is entitled to the full cooperation of the trial judge and the court reporter so that this Court will not be faced with the situation we have here where the record simply does not reflect the full facts and circumstances regarding a major assignment of error. When what is in the record is added to what is conceded in the briefs and arguments to have occurred, there is enought to suggest merit in Hickson's point. In the end, however, our decision rests primarily on another ground.
[2] We discuss this point on federal constitutional grounds because the jurisprudence there is well developed. The same premises may also be found in a consideration of our own Bill of Rights. Miss. Const. Art. 3, § 14 and § 26.
[3] Recall here that the pathologist had severed the head in addition to the hands. If the "pickled hands" may be displayed to the jury, on what principle might the head be precluded. Such ghoulish practices should not be tolerated.