# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 93-CT-00676-SCT

*HERBERT L. BREWER, III*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 6/7/93 |
| TRIAL JUDGE: | HON. BARRY FORD |
| COURT FROM WHICH APPEALED: | LEE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JOSEPH C. LANGSTON |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: DEIRDRE McCRORY |
| DISTRICT ATTORNEY: | SAM M. REEDY |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 9/25/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 12/11/97 |

**EN BANC.**

**SMITH, JUSTICE, FOR THE COURT:**

¶1. This matter is before the Court on a petition for writ of certiorari filed by Herbert L. Brewer. Certiorari review was granted by this court on March 20, 1997.

¶2. A Lee County Grand Jury presented a two count indictment against Herbert L. Brewer, III, on June 29, 1992. Count one charged Brewer with wilfully, unlawfully, feloniously and knowingly receiving a stolen pistol; and Count two charged Brewer with feloniously possessing dynamite caps, detonators, and explosives while not engaged in the lawful business which ordinarily requires the use thereof in the usual and ordinary course of business and of not notifying the sheriff of Lee County of said possession in violation of Miss. Code Ann. § 97-37-23(1) and § 97-37-23(3).

¶3. The court quashed Count I of the indictment, ruling that the property received was not "stolen" at the time the affidavit was sworn. The jury returned a verdict finding Brewer guilty as charged of possession of explosives, and the Honorable Barry Ford sentenced Brewer to a term of four years in a Mississippi State Correctional Facility.

¶4. Upon appeal, the Court of Appeals affirmed the lower court, McMillan, J., Fraiser, P.J., Bridges, Payne and Southwick, JJ., concurring; Diaz , J., dissenting, joined by Thomas, P.J., Barber, Coleman and King, JJ., by opinion rendered on September 17, 1996. The petition for rehearing was denied on December 3, 1996, and a petition for writ of certiorari was filed with this Court on December 17, 1996, and granted on March 20, 1997.

¶5. Two issues were presented to this Court for certiorari review:

> **I. UNDER THE FRUIT OF THE POISONOUS TREE DOCTRINE, DID THE LOWER COURT ERR IN ADMITTING EVIDENCE OF EXPLOSIVES WHICH WERE SEIZED PURSUANT TO A SEARCH TAINTED BY AN INVALID SEARCH WARRANT BASED ON AN AFFIDAVIT CONTAINING KNOWINGLY FALSE STATEMENTS; AND**

> **II. THE STATE'S CLOSING ARGUMENT: DID THE PREJUDICIAL AND IMPROPER CONDUCT OF THE STATE BEFORE THE JURY DENY BREWER OF HIS RIGHT TO A FAIR AND IMPARTIAL TRIAL?**

¶6. The judgment of the lower court is affirmed without discussion as to Issue I. As to Issue II, the Court finds after thorough consideration and review of the record and the applicable law that there is no basis upon which to reverse the conviction. We therefore affirm the decision of the lower court and the Court of Appeals.

**FACTS**

¶**7.** Herbert L. Brewer, III, was at the time of his arrest, a state licensed chiropractor, and owner and practitioner at the Family Chiropractic Clinic of Verona, Mississippi. In addition, Brewer owned a corporation which owned the American Pawn and Gun Shop. Brewer and his now ex-wife operated the pawn shop with the help of two employees.

¶8. Brewer's activities in connection with his pawnshop had come under scrutiny by law enforcement authorities due to information that indicated he might be in possession of a stolen computer. An undercover police officer accompanied by a cooperative individual known to Brewer went to Brewer's pawn shop and attempted to negotiate the sale of a pistol, which was represented as stolen, to Brewer. The pistol had been stolen in a burglary in Tupelo, Mississippi, and was supplied to Chief Hansel Crane by Detective Robert Hall of the Tupelo Police Department. Officer Bean told Brewer the gun was stolen on two separate occasions. Brewer asked for no name or identification from Officer Bean, and gave Officer Bean $175 for the handgun which has a retail value of approximately $974.

¶9. Based on an affidavit sworn out against Brewer by Verona Police Department Agents stating that he had received stolen property, a search warrant was issued to search the pawn shop. The officers used information gained in this search to obtain a warrant for a second search, during which the explosives were recovered. On January 6, 1992, pursuant to that search warrant, the Verona Police Department discovered and seized certain unassembled explosives on the premises of the pawn shop. VPD arrested Brewer at the time of the seizure, and he was indicted on June 29, 1992, in a two count indictment charging Brewer with receiving stolen property and feloniously possessing

explosives while not employed in a lawful business which ordinarily requires the use thereof and failure to notify the sheriff of said possession.

¶10. Pursuant to a motion to quash the indictment, the court ordered Count I of the indictment stricken on the basis that the pistol in question had previously been recovered by VPD when their agents sold it to Brewer.

¶11. Counsel for Brewer moved to suppress introduction into evidence of the detonator caps, unmixed binary explosives and detonator cord VPD seized from the pawn shop. Counsel reasoned that since the pistol which was the subject of the search warrant leading to the discovery and seizure of the evidence had previously been ruled "not stolen," then the affidavit on which the search warrant was based contained false and misleading statements, and in turn, rendered the search warrant itself invalid.

¶12. Counsel further reasoned that consequently, the search of the pawnshop and seizure of the explosives found within were illegal and violated Brewer's right to be free from unreasonable searches and seizures since VPD put forth no other evidence of their probable cause for coming on the premises of the pawn shop. Counsel asserted that based upon the above facts, the evidence obtained [the explosives] was fruit of an illegal search and seizure and so tainted that the evidence should be suppressed under the fruit of the poisonous tree doctrine.

¶13. The court denied the motion to suppress, stating that the gun which was subject of the warrant was at one time stolen so the search warrant was valid, i.e., that the factual allegations of the affidavit, as stated to Judge Sheffield at the time they were made, were true and correct under the then existing case law.

¶14. Brewer was found guilty as charged of possession of explosives.

## CERTIORARI REVIEW GRANTED AS TO THE FOLLOWING ISSUE:

## II. THE STATE'S CLOSING ARGUMENT: DID THE PREJUDICIAL AND IMPROPER CONDUCT OF THE STATE BEFORE THE JURY DENY BREWER OF HIS RIGHT TO A FAIR AND IMPARTIAL TRIAL?

¶15. Brewer claims that the prosecution improperly raised the specter of the World Trade Center bombing in closing argument for the sole purpose of exciting the passion of the jury, citing *Clemons v. State*, 320 So. 2d 368 (Miss. 1992), and *Hickson v. State*, 472 So. 2d 379 (Miss. 1985), in support of his argument that the prosecution's projection of a hand drawn slide of the words WORLD TRADE CENTER onto the wall during closing argument constitutes reversible error.

¶16. In *Clemons,* this Court held that:

> [s]o long as counsel in his address to the jury keeps fairly within the evidence and the issues involved, wide latitude of discussion is allowed; but when he departs entirely from the evidence in his argument or makes statements intended solely to excite the passions or prejudices of the jury, or makes inflammatory and damaging statements of fact not found in the evidence, the trial judge should intervene to prevent unfair argument. Moreover, this Court will not withold a reversal where such statements are so inflammatory as to influence the verdict of the jury, and

thus prevent a fair trial.

*Id.* at 371-372 (Miss. 1972). In **Hickson**, the prosecutor, without introducing them into evidence, displayed the "pickled hands" of a murder victim to a jury. This Court held:

> [C]onduct by the prosecuting attorneys that . . . interjects appeals to bias, passion or prejudice . . . . [w]here such conduct is so substantial that the accused's right to a fair trial is substantially impaired, . . . . [w]here trial judge has abused his discretion in such matters, we unhesitatingly reverse.

**Hickson v. State**, 472 So. 2d at 384.

¶17. In the situation before this Court, the following took place during the State's closing argument:

> [BY MR. GEDDIE]: Now, counsel has made a lot of milage on whether this [the explosives] is particularly adapted for the commission of a crime. And I want you to think about that. I want to turn on the projector and I want to put one slide on here, and I want us to look at it and it is sort of sloppy because I drew it when I came in.
>
> . . . .
>
> BY THE COURT: Your objection, Mr. Colom.
>
> BY MR. COLUM: Yes, Sir. You know, I mean, to draw analogy between this and a drawing of the World Trade Center is really bizarre, Your Honor.
>
> BY THE COURT: Your objection is overruled.
>
> BY MR. GEDDIE: Our burden is to show you that explosive devices can be particularly adapted to the commission of a crime. And I don't think there is a person in this United States today, after the tragedy that occurred in the World Trade Center, who would not begin to see why the legislature passed this law, requiring the registration of explosives, only to people who have to have it, because the people who don't have to have it and who want to commit a terrible, terrible crime, can use items like these here to commit horrible atrocities.

¶18. Considered in context, the prosecutor's argument sought to illustrate why the legislature had outlawed the possession of explosives not required for a legitimate business purpose. The Court of Appeals held:

> Brewer, at trial and before this Court, has advanced the proposition that a great part of the material was nothing more than common fertilizer. In the face of these assertions, the prosecutor was trying to graphically demonstrate for the jury that these materials *were* peculiarly adapted for criminal activity by giving an example that the jury would be able to understand. . . .
>
> There was not the slightest intimation that Brewer was engaged in similar activities or that he was of the same disposition as the perpetrators of the World Trade Center bombing. Given the wide latitude available to both sides in their summations, we do not find this to be the type of improper closing argument that would require a reversal of conviction. *See **Hiter v. State***, 660

So. 2d 961, 966 (Miss. 1995).

¶19. This Court has held : "So long as counsel in his address to the jury keeps fairly within the evidence and the issues involved, wide latitude of discussion is allowed. . . . " *Clemons v. State*, 320 So. 2d 368, 371-72 (Miss. 1975). "Counsel may draw upon literature, *history*, science, religion and philosophy for material for his argument." *Carr v. State*, 655 So. 2d 824, 853 (Miss. 1995). "He may navigate all rivers of modern literature or sail the seas of ancient learning; he may explore all the shores of thoughts and experiences . . . . " *Johnson v. State*, 416 So. 2d 383, 391 (Miss. 1982), quoted in *Shell v. State*, 554 So. 2d 887, 899 (Miss. 1989). The Court should be "very careful in limiting free play of ideas, imagery, and personalities of counsel in their argument to jury." *Ahmad v. State*, 603 So. 2d 843, 846 (Miss. 1992). *Accord, Clemons v. State*, 320 So. 2d 368, 371-72 (Miss. 1975).

¶20. The prosecutor was using the illustration of the World Trade Center to counter the defense's attempt to downplay the nature of these chemicals. He was properly drawing upon experience, a recent widely-publicized event, to illustrate his point. *See also* **Heidelberg v. State**, 584 So. 2d 393, 395-96 (Miss. 1991) (approving the use of charts and diagrams in closing argument). No error can be shown in the Court of Appeals' refusal to reverse on this point.

## CONCLUSION

¶21. There is no merit to Brewer's assertion that the prosecutor improperly raised the specter of the World Trade Center bombing in closing argument for the sole purpose of exciting the passion of the jury. Brewer had strenuously asserted throughout the trial that the materials confiscated were not peculiarly adapted to aid in the commission of a crime within the meaning of the statute. In the face of these assertions, the prosecutor was trying to graphically demonstrate for the jury that these materials *were* peculiarly adapted for criminal activity, and used an example the jury would be able to understand. We do not find this to be the type of improper closing argument that would require a reversal of conviction.

¶22. JUDGMENT AFFIRMED.

PRATHER, P.J., PITTMAN, BANKS, ROBERTS AND MILLS, JJ., CONCUR. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY LEE, C.J., AND SULLIVAN, P.J.

McRAE, JUSTICE, DISSENTING:

¶23. I am compelled to dissent. The sheer act by the prosecutor of projecting a slide with the words

"World Trade Center" to a jury and then alluding to that projection during closing argument did nothing but portray the defendant as a cold, ruthless terrorist who did not care what he did or who he killed. This characterization did not comport with the evidence presented, and therefore served only to inflame the passions of the jury.

¶24. A prosecutor is not permitted to use tactics which are inflammatory, highly prejudicial and reasonably calculated to unduly influence the jury. *Hiter v. State*, 660 So. 2d 961, 966 (Miss. 1995); *Acevedo v. State*, 467 So. 2d 220, 226 (Miss.1985); *Forrest v. State*, 335 So. 2d 900, 903 (Miss.1976); *Craft v. State*, 271 So. 2d 735, 737 (Miss.1973). Trial courts are usually allowed considerable discretion to determine whether or not the conduct of an attorney in argument is so prejudicial that an objection should be sustained or a new trial granted. *Edmond v. State*, 312 So. 2d 702, 705 (Miss.1975). The test to make such a determination is whether the natural and probable effect of improper argument is to create unjust prejudice against the accused so as to result in a decision influenced by prejudice. *Johnson v. State*, 596 So. 2d 865, 869 (Miss.1992). Based on the evidence presented, the trial court abused its discretion in ruling that the reference to the World Trade Center was a reasonable inference that could be drawn by the prosecutor.

¶25. The natural and probable effect of the prosecutor's improper argument was to create unjust prejudice against Brewer so as to result in a decision by the jury which this Court cannot say, with any degree of certainty, was not influenced by prejudice. *Harvey v. State*, 666 So. 2d 798, 801 (Miss. 1995). Although there was evidence that Brewer was in possession of explosives, the inference that his possession of munitions could have eventually led to a bombing like the one at the World Trade Center was totally beyond the scope of the evidence presented. The terrorist attack upon the World Trade Center was indeed tragic, and the mere mention of such an act to any jury could certainly create a sense of rage toward a defendant. Nevertheless, in a case like this one, where the defendant was not alleged to have engaged in any plots to kill or destroy, a reference to the World Trade Center bombing only creates unfair prejudice leading to an unfair conviction. *See Id.*(reversing conviction based on improper closing argument, despite the evidence that defendant was guilty of aggravated assault).

¶26. "It is inappropriate for the prosecutor to make arguments to the jury that give the impression that emotion may reign over reason, and to present inflammatory rhetoric that diverts the jury's attention from its proper role or invites an irrational, purely subjective response to evidence presented." *Hunter v. State*, 684 So. 2d 625, 638 (Miss. 1996) (Sullivan, P.J., concurring in part and dissenting in part). The purpose of closing argument is to enlighten the jury, not to enrage it. *Bridgeforth v. State*, 498 So. 2d 796, 801 (Miss.1986). Here, by inflaming the passions of the jury through reference to a completely irrelevant event, the prosecutor engaged in conduct constituting reversible error. Brewer did not receive a fair trial due to an improper closing argument by the prosecution; therefore, I respectfully dissent.

**LEE, C.J., AND SULLIVAN, P.J., JOIN THIS OPINION.**