970 So.2d 1300 (2007)
Amanda Rochelle BROWN, Appellant
v.
STATE of Mississippi, Appellee.
No. 2006-KA-00717-COA.
Court of Appeals of Mississippi.
December 11, 2007.
*1302 Charles E. Miller, McComb, attorney for appellant.
Office of the Attorney General by John R. Henry, attorney for appellee.
Before KING, C.J., CHANDLER and CARLTON, JJ.
CHANDLER, J., for the Court.
¶ 1. The appellant, Amanda Brown, was tried in the Circuit Court of Pike County for the murder of Lakisha Russ.[1] After a five-day trial, the jury convicted her of manslaughter. The judge sentenced her to twenty years in the custody of the Mississippi Department of Corrections, with four years suspended and four years of post-release supervision. Aggrieved by her conviction, Brown appeals. She asserts the following points of error:
I. The evidence was insufficient to support a conviction; therefore, a judgment notwithstanding the verdict should have been granted.
II. The indictment should have been dismissed or a mistrial granted when testimony of prior bad acts was introduced.
III. The arrest was illegal.
IV. Denial of jury instructions.
V. The appellant was tortured.
VI. The judge should have ordered a competency hearing.
VII. The testimony of Latonya McKnight should have been suppressed.
VIII. The appellant was shackled in front of the jury.
IX. The sentence constituted cruel and unusual punishment and was unconstitutional under the Eighth Amendment.
¶ 2. Finding no error, we affirm.

FACTS
¶ 3. On May 21, 2005, 911 dispatch received a call that the decedent, Lakisha Russ, had stabbed herself. Officers of the McComb Police Department arrived at Amanda Brown's apartment shortly after the call and found Russ lying in the doorway of the apartment. The appellant, Brown, and another woman at the scene, Latonya McKnight, had apparently decided that the ambulance was taking too long and had tried to put Russ in the car to take her to the hospital.
¶ 4. Russ was taken to the hospital where she was pronounced dead from a stab wound to her left shoulder area. When questioned about the incident, Brown told officers that Russ had stabbed herself. She said that she and Russ were lovers and that she had told Russ that she was leaving her. Upset by the news, Brown said Russ went into the kitchen, came back with a knife, and took her own life. McKnight said she witnessed the event and confirmed Brown's story.
¶ 5. The two women were taken to the police station where they reaffirmed the accounts they gave at the scene. Officer Leanne Slipher, lead investigator for the case, and Detective James Cowart testified that there were some discrepancies with the women's accounts, so they questioned *1303 McKnight again. They informed her that she could be charged as an accomplice for withholding information concerning the crime. Eventually, McKnight changed her story and said that it was Brown who stabbed Russ. She said Brown and Russ had gotten into an argument, and Russ had begun to remove her clothes from Brown's apartment. McKnight then said that Russ went to the kitchen, and when she came back, Brown stabbed her. According to McKnight, Brown then told McKnight to say that Russ stabbed herself. Based on McKnight's statement, Brown was arrested and charged with the murder of Russ.
¶ 6. McKnight later wrote a statement that said she did not see anyone stab Russ. At trial she claimed that Brown's family had pressured her into writing the statement. She also reiterated her statement implicating Brown and stated that it was the truth. She admitted that her first statements to the police and the most recent written statement were lies. She claimed that she told the falsehoods because she did not want Brown to go to jail and because she was afraid of not saying what Brown and her family wanted her to say.
¶ 7. While investigating the apartment, officers noticed large amounts of blood on the floor and walls of the hallway. The officers also found blood in the bedroom and what appeared to be blood on the pillow and on the comforter on the bed. The knife that caused the victim's wound was found down the hall. In the bedroom closet was a box of knives with two missing. They were like the knife used to stab Russ. Besides the knife recovered in the hall, there was also another matching knife in the dishwasher in the kitchen. According to the crime lab technician, no fingerprints were recovered from the knife that caused the injury because of the texture of the handle and the excessive amount of blood that covered it.
¶ 8. Percy Pittman, the Pike County coroner, found that Russ's cause of death was a "massive chest injury due to [a] stab wound" and classified the death as a homicide. Dr. Stephen Hayne performed an autopsy on Russ and testified as an expert. Dr. Hayne similarly concluded that Russ died from a stab wound that severed the brachial artery on the left side of her body, which led to massive blood loss. He also found the manner of death to be homicide, which he defined as the taking of another person's life by a second party. Dr. Hayne testified that it would have been very difficult, essentially impossible, for Russ to have caused the injury to herself. He based his conclusion on the angle of the wound and the force necessary to cause the injury. Furthermore, Dr. Hayne testified that, in his experience, a suicide usually involves a gunshot, hanging, drugs, or slash wounds to the wrists, neck, or insides of the elbows.
¶ 9. At the conclusion of the five-day trial, the jury convicted Brown of manslaughter. The judge sentenced her to twenty years with four years suspended and four years of post-release supervision. She now appeals her conviction and sentence and cites a bevy of issues.

ISSUES AND ANALYSIS
I. Sufficiency of the evidence
¶ 10. Brown's first allegation of error is that the evidence was not sufficient to support her conviction of manslaughter. She argues that McKnight's testimony was not corroborated by any of the police officers and was, therefore, unreliable. She also argues that the State's case was based entirely on circumstantial evidence, in which event it should have been held to a higher burden of proof. Because of the *1304 alleged unreliability of McKnight's testimony and circumstantial nature of the case, Brown claims that the trial court erred by denying her motion for a judgment notwithstanding the verdict.
¶ 11. In reviewing a trial court's denial of a motion for a judgment notwithstanding the verdict, we must look at the sufficiency of the evidence. Bush v. State, 895 So.2d 836, 843(¶ 15) (Miss.2005). We will ask whether the evidence shows "`beyond a reasonable doubt that accused committed the act charged and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction.'" Id. at 843(¶ 16) (quoting Carr v. State, 208 So.2d 886, 889 (Miss.1968)). Taking the evidence in the light most favorable to the verdict, the question is whether a rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt. Id. at 843(¶ 16) (quoting Jackson v. Virginia, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).
¶ 12. In this case, Brown was convicted of manslaughter. Mississippi Code Annotated section 97-3-35 (Rev.2006) provides that "[t]he killing of a human being, without malice, in the heat of passion, but in a cruel or unusual manner, or by the use of a dangerous weapon, without authority of law, and not in necessary self-defense, shall be manslaughter." In the alternative, Mississippi Code Annotated section 97-3-47 (Rev.2006) provides that "[e]very other killing of a human being, by the act, procurement, or culpable negligence of another, and without authority of law, not provided for in this title, shall be manslaughter."
¶ 13. To support its case, the State presented the murder weapon, McKnight's eyewitness testimony that Brown stabbed Russ during an argument, the testimony of various police officers, and the conclusions of the coroner and the doctor who performed the autopsy. The defense had the opportunity to cross-examine McKnight and bring out the fact that she initially agreed with Brown's account. Brown also took the stand and gave her own version of what happened that night. The jury, therefore, had the opportunity to hear both accounts. Viewing the evidence most favorably to the verdict, a rational trier of fact could have found all elements of manslaughter beyond a reasonable doubt. Bush, 895 So.2d at 843(¶ 16). We find this evidence was sufficient and reliable to support the conviction of Brown.
¶ 14. Next, Brown is correct in her recitation of the standard for a circumstantial evidence case. When a case is based wholly on circumstantial evidence, the State must prove the defendant's guilt beyond a reasonable doubt and to the exclusion of every reasonable hypothesis consistent with innocence. Jones v. State, 918 So.2d 1220, 1237(¶ 43) (Miss.2005). However, a circumstantial evidence instruction is proper only if the case is based wholly on circumstantial evidence. Sheffield v. State, 749 So.2d 123, 126(¶ 12) (Miss.1999). A circumstantial evidence instruction is not proper if the case contains both circumstantial evidence and direct evidence such as eyewitness testimony. Id.
¶ 15. In this case, the State presented direct evidence in the form of McKnight's eyewitness testimony. In her brief, Brown even refers to McKnight's testimony in the sentence immediately preceding her claim that the State's case was based entirely on circumstantial evidence. Because the State presented McKnight's eyewitness testimony, this was not a circumstantial evidence case, and there was no need to give a circumstantial evidence instruction.
*1305 ¶ 16. We find there was sufficient evidence to convict Brown of manslaughter; therefore, the trial court properly denied her motion for a judgment notwithstanding the verdict. Brown's last assertion, that McKnight was an unreliable informant, is irrelevant to the issue of whether the evidence was sufficient to convict her. This issue is without merit.
II. Testimony concerning Brown's prior bad acts
¶ 17. Brown next alleges that the court erred by allowing testimony concerning her prior bad acts. She claims that the court allowed police officers and other witnesses to testify that she previously stabbed her stepfather. Because this type of testimony is prohibited by Rule 404(b) of the Mississippi Rules of Evidence, Brown argues that the court should have dismissed her indictment or granted a mistrial when this testimony was elicited.
¶ 18. Having reviewed the record, we find no mention of the State's introduction of evidence that Brown stabbed her stepfather. The only reference to this bad act we find is in an audiotape introduced by and played to the jury by the defense. Contrary to Brown's assertions on appeal, the State objected to the playing of the tape in court.
¶ 19. "The general rule is that a defendant may not, himself, introduce evidence at trial and then assert on appeal that the admission of the evidence constituted reversible error." Isom v. State, 928 So.2d 840, 849(¶ 24) (Miss.2006) (quoting McCullough v. State, 750 So.2d 1212, 1215(¶ 9) (Miss.1999)). Because Brown introduced the tape and played it to the jury, she cannot now assert that it is reversible error on appeal. This argument is without merit.
III. Illegal arrest
¶ 20. In her third point of error, Brown takes issue with her arrest and the reliability of McKnight. Brown claims that as a result of McKnight's uncorroborated testimony, she was arrested, held, and questioned without probable cause. She then concludes that her arrest was illegal.
¶ 21. The supreme court provided the following guidance on the issuance of warrants:
To make an arrest for a felony, either with or without a warrant, a police officer must have (1) reasonable cause to believe that a felony has been committed; and (2) reasonable cause to believe that the person proposed to be arrested is the one who committed it. Arrest warrants or search warrants shall be issued only by the judge after a judicial determination that probable cause exists based upon the affidavit or other evidence before the court. The United States Supreme Court has established a totality of the circumstances standard for determining the existence of probable cause: The task of the issuing magistrate is simply to make a practical, common-sense decision based on all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information.
State v. Woods, 866 So.2d 422, 425 (¶ 10) (Miss.2003) (citations omitted).
¶ 22. Based on the police investigation and the conclusions of the coroner and the doctor who performed the autopsy, there was reasonable cause to believe a homicide had been committed. From McKnight's account and the circumstances surrounding Russ's death, there was also probable cause to arrest Brown for Russ's murder.
*1306 ¶ 23. In support of Brown's argument that her arrest was illegal, she cites State v. Woods, 866 So.2d 422 (Miss.2003), for the proposition that uncorroborated information from a confidential informant is insufficient to support a search warrant. Woods is inapplicable to the present case, however, because McKnight was not a confidential informant. Furthermore, there was corroborating information that suggested that Brown might have killed Russ and that it was not a suicide. Brown and Russ got into an argument that night. Some of Russ's clothes had been removed from Brown's apartment. There was also a box of knives in the bedroom closet that matched the knife used to stab Russ. While McKnight did change her story, it was consistent with the evidence, and none of the police officers who interviewed her believed that McKnight's initial story was true.
¶ 24. Because we find there was probable cause to arrest Brown, we find that her arrest was legal. Brown's arguments to the contrary are without merit.
IV. Denial of jury instructions
¶ 25. Brown next takes issue with the court's denial of certain defense jury instructions. Brown lists four jury instructions and claims their denial was "tantamount to a violation of [her] constitutional rights." She cites no authority for why it was improper for the court to deny the instructions. The four instructions are summarized as follows: (1) that the testimony of an accomplice "is to be considered and weighed with great care and caution," (2) a circumstantial evidence instruction, (3) that Brown's testimony must be taken as true if she was the only eyewitness to the homicide, and (4) that the testimony of a witness who testifies in exchange for pay, immunity from prosecution, or for personal advantage must be examined with greater caution.
¶ 26. Rule 28(a)(6) of the Mississippi Rules of Appellate Procedure provides that the appellant's brief "shall contain the contentions of the appellant with respect to the issues presented, and the reasons for those contentions, with citations to the authorities, statutes and parts of the record relied on." In this case, Brown cites no authority for her contention that the instructions were improperly denied, nor does she provide any argument to support her contention. Failure to support an issue with citations to authorities will bar this Court from considering it. Britt v. State, 844 So.2d 1180, 1183(¶ 9) (Miss.Ct.App.2003). Furthermore, reading the jury instructions as a whole, we find they fairly announce the law of the case and create no injustice nor reversible error. Milano v. State, 790 So.2d 179, 184(¶ 14) (Miss.2001).
V. Torture
¶ 27. Brown next argues that she was tortured while incarcerated at the Pike County Sheriff's Department. According to Brown's claim, officers "conducted an attack on [her] and other persons in the jail." Her claim stems from an incident when an officer sprayed mace in a cell during an inmate disturbance. Brown combines this allegation with a claim that the police were to provide her proper medical care and argues that her due process rights were violated. Because of the alleged torture, Brown argues that her case should have been dismissed.
¶ 28. Brown cites us to no authority for her proposition that the trial court should have dismissed the case based on the alleged torture by the Sheriff's Department. The authority she does cite provides that the Due Process Clause of the Fourteenth Amendment requires "the responsible government *1307 or governmental agency to provide medical care to persons . . . who have been injured while being apprehended by the police." City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983). The rule that Brown may have been entitled to medical care provides no basis for this Court to find that dismissal of the charges against her was the proper remedy for any injury she may have suffered at the hands of the Sheriff's Department. This issue is without merit.
VI. Competency of Brown
¶ 29. Brown's next claim seems to be that, because she was a twenty year old minor and pregnant, she was not competent to stand trial. She argues that her mental state warrants dismissal of the case against her. Her argument at trial was similarly lacking in that she argued that she was incompetent to stand trial because she was pregnant and was in pain.
¶ 30. Rule 9.06 of the Uniform Rules of Circuit and County Court Practice provides as follows:
If before or during the trial the court, of its own motion or upon motion of an attorney, has reasonable ground to believe that the defendant is incompetent to stand trial, the court shall order the defendant to submit to a mental examination by some competent psychiatrist selected by the court in accordance with § 99-13-11 of the Mississippi Code Annotated of 1972.
We have previously stated that a "defendant not competent to stand trial is one who does not have sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding, or does not have a rational as well as a factual understanding of the proceedings against him." Carter v. State, 932 So.2d 850, 855(¶ 19) (Miss.Ct.App.2006) (quoting Gammage v. State, 510 So.2d 802, 803 (Miss.1987)).
¶ 31. As in Carter, we do not find the defendant presented sufficient evidence to support her claim that a mental examination was necessary. Id. at 855(¶ 20). Brown did not assert any mental incompetency until the fifth day of trial. The judge, after consulting Rule 9.06 and hearing argument from the defense, found that there was no reasonable ground to believe that Brown was not competent to aid in her defense. Specifically, the judge noted that he had observed Brown for more than four days of the trial, and she appeared quite competent. He found that Brown's arguments in favor of the motionthat she was pregnant, experienced stomach pain, and the alleged mistreatment by the sheriff's departmentwere insufficient to necessitate a competency hearing and thereby delay the trial in progress.
¶ 32. The judge denied Brown's request for a hearing and instead allowed her to submit affidavits in support of her claim of incompetence. He stated that if the affidavits were sufficiently probative of her incompetence they could warrant a hearing at a later date.
¶ 33. In addition to the lack of evidence to indicate Brown was incompetent is the fact that she later took the stand at trial and presented rational testimony. Accordingly, we find that the trial judge properly considered the issue of Brown's competence and properly denied her request for a mental examination.
VII. Suppression of evidence
¶ 34. Next, Brown argues that the trial court erred by failing to suppress physical evidence including but not limited to audiotapes, the murder weapon, and photographs of the crime scene. According to Brown's argument, because McKnight *1308 gave conflicting accounts, "the investigation leading to the arrest was illegal. Thus, the arrest was illegal." She concludes that "[a]ll such evidence illegally obtained should be suppressed as fruit of the poisonous tree."
¶ 35. Brown again cites to Woods and argues that her arrest was illegal. As we stated above, however, Woods is inapplicable to the present case. We also found that Brown's arrest was supported by probable cause and was legal. Because her arrest was supported by probable cause, there is no merit to her assertion that the police illegally obtained the listed evidentiary items.
¶ 36. Nevertheless, Brown argues that the "audiotape, knife, photographs, etc." should have been suppressed. She does not cite any authority that supports this proposition, however. Not only was Brown's arrest legal but most of the evidence was recovered before her arrest. The knife was recovered at the crime scene. The photos represented the crime scene and the wounds to the victim's body. There were a number of audiotapes placed in evidence, and Brown does not specify with which of them she takes issue. As we previously stated, the defense introduced these tapes and played them at trial; therefore, she may not complain about them now.
¶ 37. We apply an abuse of discretion standard when reviewing a trial court's ruling on a matter of evidence. Mingo v. State, 944 So.2d 18, 26(¶ 14) (Miss.2006). In this case, not only was Brown's arrest legal but the majority of the evidence was recovered before her arrest. We find that it was not an abuse of discretion for the trial court to allow the introduction of the evidence of which Brown now complains. This issue is without merit.
VIII. Shackling of Brown
¶ 38. In this point of error, Brown claims that jurors were present at a time when she was shackled. She argues that this alleged incident warranted the dismissal of her case because a defendant is protected from appearing before the jury in restraints unless necessary.
¶ 39. Brown cites Hickson v. State, 472 So.2d 379 (Miss.1985), in support of her argument. The court in Hickson, however, did not rule on whether reversal was required when the defendant was handcuffed in court for approximately thirty to forty-five minutes. Id. at 383. Furthermore, Hickson relied on Rush v. State, 301 So.2d 297, 300 (Miss.1974), which found that failure to remove a defendant's handcuffs for a short time because of an oversight was not grounds for reversal.
¶ 40. The record reflects that it was at most questionable if any of the members of the venire saw Brown in handcuffs. Testimony indicates that one member of the venire may have seen Brown in the hall on the morning in question when she would have been handcuffed. That member clarified that, while she saw Brown, she did not notice her in handcuffs. She also stated that she had not talked to anyone else on the venire about seeing Brown that morning. Nevertheless, the court excused that venire member. Another venire member brought into chambers stated she did not see Brown that morning. When the remaining members of the venire were then asked if they had seen Brown on the morning in question, none of them indicated they had seen her. There were members of an unrelated grand jury in the hall who could have seen Brown in handcuffs, but that is irrelevant.
¶ 41. Because no members of the venire indicated that they saw Brown on the morning in question, this issue is without *1309 merit. Even if someone had seen her, similar to Rush, it would only have been momentarily and would not have been sufficient to require reversal.
IX. Whether the sentence constitutes cruel and unusual punishment
¶ 42. Lastly, Brown takes issue with her sentence of twenty years, with four years suspended and four years of post-release supervision.[2] She cites the Eighth Amendment as authority for her argument that the sentence constitutes cruel and unusual punishment. She would have this Court find that the sentence imposed is disproportionate to her crime.
¶ 43. Because Brown did not raise this issue at the trial level, this Court is now barred from considering it on appeal. Ferrell v. State, 810 So.2d 607, 611(¶ 19) (Miss.2002). Nevertheless, this claim also fails on the merits. A sentence that is within the guidelines provided for by the legislature will not be considered cruel and unusual. Id. at 611(¶ 20). Mississippi Code Annotated section 97-3-25 (Rev.2006) provides for a maximum sentence of twenty years for manslaughter. Brown's sentence of twenty years with four years suspended and four of years post-release supervision is within the statutory guidelines. This issue is without merit.
¶ 44. THE JUDGMENT OF THE CIRCUIT COURT OF PIKE COUNTY OF CONVICTION OF MANSLAUGHTER AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH FOUR YEARS SUSPENDED AND FOUR YEARS OF POST-RELEASE SUPERVISION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO PIKE COUNTY.
KING, C.J., LEE AND MYERS, P.J., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.
NOTES
[1] The State's brief refers to the victim as Lakisha Ross; however, the autopsy report and the other documents in evidence list her last name as Russ.
[2] The appellant's brief incorrectly notes that the sentence is twenty years with five years suspended.